IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

UNITED STATES OF AMERICA

vs.                                    Case Nos.:        4:08cr50/WS/GRJ
                                                         4:12cv656/WS/GRJ

MARCUS BARRINGTON

_____

## REPORT AND RECOMMENDATION

This matter is before the court upon Defendant's Motion under §

2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal

Custody and supporting memorandum of law. (ECF Nos. 200, 210.)  The

Government has filed a response (ECF No. 215) and Defendant filed a

reply.  (ECF No. 216.)  Defendant also has filed a document titled "Leave

of Court Pursuant to F.R.C.Pr. 201 to Take Judicial Notice of Adjudicative

Facts" (ECF No. 218), which the court has reviewed and considered. After

a careful review of the record and the arguments presented, the Court

concludes that Defendant has not raised any issue requiring an evidentiary

hearing and that the § 2255 motion should be denied.  *See* Rules

Governing Section 2255 Cases 8(a) and (b).

## FACTUAL AND PROCEDURAL BACKGROUND

Defendant was charged in a three count indictment with conspiracy to commit wire fraud and computer fraud, a substantive count of computer fraud and three counts of aggravated identity theft.  (ECF No. 1.)  Co-conspirators Christopher Jacquette and Lawrence Secrease were charged in Counts 1 through 4 and Counts 1 through 3, respectively.  Jacquette and Secrease each entered guilty pleas, received the benefit of substantial assistance motions pursuant to § 5K1.1, and were sentenced to total terms of 22 months imprisonment.  (ECF Nos. 38–40, 52–54, 113, 119.)

Defendant and two co-defendants were undergraduate students at Florida Agricultural and Mechanical University ("FAMU") in Tallahassee when they concocted a scheme to access FAMU's internet-based grading system to change grades recorded in the system.[1]  Beginning in the summer of 2007, Barrington used forged university grade change slips, but when the paper system became ineffective, the conspirators developed a plan to use keylogger software to access the system electronically.  By installing the software on various university computers, they were able to

---

[1]The factual background set forth herein is summarized from the Eleventh Circuit's opinion on appeal. (ECF No. 180.)

Case Nos.: 4:08cr50/WS/GRJ; 4:12cv656/WS/GRJ

capture the username and passwords of several FAMU Registrar's Office employees.  The conspirators used this information to access the grading system from other computers and then changed grades, added credits for courses that had been failed or not taken, and changed the residencies of several out-of-state students who would them qualify for in-state tuition.[2]

An investigation was triggered when a FAMU professor discovered that one of his students, Barrington's sister, had received two unauthorized grade changes. The co-conspirators received over 100 grade changes, but ultimately the investigation revealed that the conspirators had changed the grades of approximately 90 students, and approximately 650 grades overall.  FAMU learned of and reversed the unauthorized grade changes, and Barrington and his sister were questioned by campus police in September of 2007.  Soon thereafter, the conspirators caused keyloggers to be installed on the computers used at the FAMU Registrar's office for a second time. They then re-changed the grades that FAMU had corrected. Additionally, they began making random grade changes for students who were not originally involved in the scheme to throw off investigators and

_____

[2] The conspirators received payment from at least two students for whom they changed residency status and divided the proceeds.

make the changes look like they resulted from a flaw in the system rather than a deliberate act.  According to Jacquette, Barrington's logic was that if the changes continued, it would divert suspicion from him, because the police would think he would have to have been an absolute idiot to continue with the scheme after having been questioned.  At some point during this time period, co-conspirator Secrease was terminated from his job at FAMU and lost access to the FSU/FAMU computer lab where some grade changes had been made.  Defendant Barrington provided funds for the purchase of a laptop computer which the conspirators used to continue to make grade changes using free wifi.

In November of 2007, law enforcement executed search warrants at the conspirators' residences and discovered incriminating evidence, including papers containing the usernames and passwords of FAMU registrar employees, student class information and ID numbers, and notes outlining classes and grades and directing certain grade changes.  At the time, investigators did not find the laptop computer suspected to have been used to make the grade changes.  Law enforcement later leaned that Defendant had taken it to the home of another student to conceal it.  They ultimately recovered the computer and conducted a forensic analysis which

revealed that the laptop had been used to effect grade and residency changes.

After the indictment, Defendant and his retained counsel met with investigators at the office of the U.S. Attorney's office.  Defendant consented to a Rule 11 proffer, during which he admitted involvement in the offense, but attempted to shift blame onto Jacquette and Secrease.

At trial, Defendant essentially denied any involvement in the scheme, claiming that he was "merely present" during the installation of the keyloggers, and during the grade changing and concealment activities. The Government offered the rebuttal testimony of an FBI agent who testified that during Barrington's Rule 11 proffer he admitted to having participated in the scheme, including acting as a lookout while the two coconspirators installed keyloggers, using the passwords, and asking that his sister's and another female student's grades be changed.

Defendant was initially represented by appointed counsel Gary Lee Printy, but he retained Robert Augustus Harper, Jr. approximately one month after his indictment. (ECF No. 28, 29, 46.)[3]  After Defendant's

─────────────────

[3] Mr. Harper died on April 23, 2013, before the Government filed its response in this case.

conviction at trial (ECF No. 98), the defense filed a motion for judgment of aquittal and for a new trial, claiming the Government had not shown that any internet transmissions had traveled across state lines, thus failing to meet federal jurisdictional requirements.  The district judge denied the motion.  (*See* ECF Nos. 105, 107, 142.)

The Presentence Investigation Report ("PSR") reflects that Counts 1 and 2 were grouped for guidelines calculations purposes.  (ECF No. 175.) Defendant's Total Offense Level was 25 on these two counts.  His base offense level was seven, but he received a ten level adjustment due to the amount of loss and four two-level adjustments for sophisticated means, the use of device making equipment, his leadership role, and obstruction of justice.  Defendant had no criminal history and thus his criminal history category was I.  The applicable advisory guidelines range was 57 to 71 months.  A two year consecutive sentence was mandated on Counts 3, 4, and 5.  (*See* ECF No. 175.)

Before sentencing, Defendant retained attorney Hugo A. Rodriguez, who was substituted for Mr. Harper.  (ECF No. 128, 129.)  The defense filed objections to each of the two-level adjustments, as well as to the amount of loss. (ECF No. 140.)  After hearing argument at sentencing, the

district judge overruled the objections to each of the two-level adjustments. (ECF No. 169 at 43–48).  The district judge sentenced Defendant to a term of 60 months imprisonment on Counts 1 and 2, followed by consecutive term of 24 months on Counts 3, 4, and 5.  The district judge noted the seriousness of the offense, Defendant's lack of acceptance of responsibility[4] and what the judge deemed Defendant's "shocking" display of arrogance and contempt for the law.  (ECF No. 169 at 63–64.)

Defendant appealed his convictions and his sentence and the Eleventh Circuit affirmed in a lengthy opinion.  United States v. Barrington, 648 F.3d 1178 (11th Cir. 2011); (ECF No. 180.)  With respect to his convictions, Defendant challenged the admission of Rule 404(b) evidence at trial, the district court's restriction on his cross-examination of a cooperating co-defendant, and the sufficiency of the evidence supporting his aggravated identity theft convictions.  He further contended that the conspiracy count in the indictment was duplicative and that the jury instructions on conspiracy and aggravated identity theft were erroneous. Defendant also raised multiple claims of error with respect to his sentence.

---

[4] Counsel noted that he had advised Defendant not to admit to any wrongdoing in light of Defendant's desire to appeal "certain issues."  (ECF No. 169 at 62.)

Defendant asserted that the court erred in calculating his base offense level, infringed on his right against self-incrimination at sentencing by questioning him about his apparent lack of remorse, erred in calculating loss, erred in applying Guidelines enhancements for use of sophisticated means, his leadership role, use of device-making equipment and the production of unauthorized access devices. He also argued that his sentence was substantively and procedurally unreasonable. The Eleventh Circuit conducted a thorough discussion of each issue raised and affirmed Defendant's convictions and sentence. The Supreme Court of the United States denied certiorari on January 26, 2012. (ECF No. 191.) Defendant filed a § 2255 motion in February of 2012, which he subsequently moved to voluntarily dismiss without prejudice. (*See* ECF Nos. 192–197.) The instant motion to vacate was timely filed in December of 2012. (ECF No. 200.) Defendant filed his supporting memorandum of law in April of 2013. (ECF No. 210.)

In the present motion, Defendant raises three claims alleging constitutionally ineffective assistance by trial counsel, a claim of sentencing disparity, and a claim of prosecutorial misconduct. The Government opposes the motion in its entirety.

Case Nos.: 4:08cr50/WS/GRJ; 4:12cv656/WS/GRJ

# LEGAL ANALYSIS

## *General Standard of Review*

Collateral review is not a substitute for direct appeal, and therefore the grounds for collateral attack on final judgments pursuant to § 2255 are extremely limited.  A prisoner is entitled to relief under section 2255 if the court imposed a sentence that (1) violated the Constitution or laws of the United States, (2) exceeded its jurisdiction, (3) exceeded the maximum authorized by law, or (4) is otherwise subject to collateral attack.  *See* 28 U.S.C. § 2255(a); McKay v. United States, 657 F.3d 1190, 1194 n. 8 (11th Cir. 2011).  "Relief under 28 U.S.C. § 2255 'is reserved for transgressions of constitutional rights and for that narrow compass of other injury that could not have been raised in direct appeal and would, if condoned, result in a complete miscarriage of justice.'"  Lynn v. United States, 365 F.3d 1225, 1232 (11th Cir. 2004) (citations omitted).  The "fundamental miscarriage of justice" exception recognized in Murray v. Carrier, 477 U.S. 478, 496 (1986), provides that it must be shown that the alleged constitutional violation "has probably resulted in the conviction of one who is actually innocent . . . ."

The law is well established that a district court need not reconsider issues raised in a section 2255 motion which have been resolved on direct appeal.  Rozier v. United States, 701 F.3d 681, 684 (11th Cir. 2012); United States v. Nyhuis, 211 F.3d 1340, 1343 (11th Cir. 2000); Mills v. United States, 36 F.3d 1052, 1056 (11th Cir. 1994).  Once a matter has been decided adversely to a defendant on direct appeal, it cannot be re-litigated in a collateral attack under section 2255.  Nyhuis, 211 F.3d at 1343 (quotation omitted).  Broad discretion is afforded to a court's determination of whether a particular claim has been previously raised.  Sanders v. United States, 373 U.S. 1, 16 (1963) ("identical grounds may often be proved by different factual allegations . . . or supported by different legal arguments . . . or couched in different language . . . or vary in immaterial respects").

Furthermore, a motion to vacate under section 2255 is not a substitute for direct appeal, and issues which could have been raised on direct appeal are generally not actionable in a section 2255 motion and will be considered procedurally barred.  Lynn, 365 F.3d at 1234–35; Bousley v. United States, 523 U.S. 614, 621 (1998);  McKay v. United States, 657 F.3d 1190, 1195 (11th Cir. 2011).  An issue is "'available' on direct appeal

when its merits can be reviewed without further factual development."

Lynn, 365 F.3d at 1232 n. 14 (quoting Mills, 36 F.3d at 1055).   Absent a

showing that the ground of error was unavailable on direct appeal, a court

may not consider the ground in a section 2255 motion unless the

defendant establishes (1) cause for not raising the ground on direct appeal,

and (2) actual prejudice resulting from the alleged error, that is,

alternatively, that he is "actually innocent."  Lynn, 365 F.3d at 1234;

Bousley, 523 U.S. at 622 (citations omitted).  To show cause for procedural

default, a defendant must show that "some objective factor external to the

defense prevented [him] or his counsel from raising his claims on direct

appeal and that this factor cannot be fairly attributable to [defendant's] own

conduct."  Lynn, 365 F.3d at 1235.  A meritorious claim of ineffective

assistance of counsel can constitute cause.  *See* Nyhuis, 211 F.3d at

1344.

Ineffective assistance of counsel claims are generally not cognizable

on direct appeal and are properly raised by a § 2255 motion regardless of

whether they could have been brought on direct appeal.  Massaro v. United

States, 538 U.S. 500, 503 (2003); *see also* United States v. Franklin, 694

F.3d, 1, 8 (11th Cir. 2012).  In order to prevail on a constitutional claim of

ineffective assistance of counsel, a defendant must demonstrate both that counsel's performance was below an objective and reasonable professional norm and that he was prejudiced by this inadequacy. Strickland v. Washington, 466 U.S. 668, 686 (1984); Williams v. Taylor, 529 U.S. 362, 390 (2000); Darden v. United States, 708 F.3d 1225, 1228 (11th Cir. 2013).  In applying Strickland, the court may dispose of an ineffective assistance claim if a defendant fails to carry his burden on either of the two prongs.  Strickland, 466 U.S. at 697; Brown v. United States, 720 F.3d 1316, 1326 (11th Cir. 2013); Holladay v. Haley, 209 F.3d 1243, 1248 (11th Cir.2000) ("[T]he court need not address the performance prong if the defendant cannot meet the prejudice prong, or vice versa.").

In determining whether counsel's conduct was deficient, this court must, with much deference, consider "whether counsel's assistance was reasonable considering all the circumstances." Strickland, 466 U.S. at 688; see also Dingle v. Sec'y for Dep't of Corr., 480 F.3d 1092, 1099 (11th Cir. 2007).  Reviewing courts are to examine counsel's performance in a highly deferential manner and "must indulge a strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance." Hammond v. Hall, 586 F.3d 1289, 1324 (11th Cir. 2009) (quoting

Strickland, 466 U.S. at 689); *see also* Chandler v. United States, 218 F.3d

1305, 1315–16 (11th Cir. 2000) (discussing presumption of

reasonableness of counsel's conduct); Lancaster v. Newsome, 880 F.2d

362, 375 (11th Cir. 1989) (emphasizing that petitioner was "not entitled to

error-free representation").  Counsel's performance must be evaluated with

a high degree of deference and without the distorting effects of hindsight.

Strickland, 466 U.S. at 689.  To show counsel's performance was

unreasonable, a defendant must establish that "no competent counsel

would have taken the action that his counsel did take."  Gordon v. United

States, 518 F.3d 1291, 1301 (11th Cir. 2008) (citations omitted); Chandler,

218 F.3d at 1315.  When reviewing the performance of an experienced trial

counsel, the presumption that counsel's conduct was reasonable is even

stronger, because "[e]xperience is due some respect."  Chandler, 218 F.3d

at 1316 n.18.

　　　　With regard to the prejudice requirement, defendant must establish

that, but for counsel's deficient performance, the outcome of the

proceeding would have been different.  Strickland, 466 U.S. at 694.  "The

likelihood of a different result must be substantial, not just conceivable."

Harrington v. Richter, 562 U.S. 86, 112 (2011) (quoting Strickland).  For

the court to focus merely on "outcome determination," however, is insufficient; "[t]o set aside a conviction or sentence solely because the outcome would have been different but for counsel's error may grant the defendant a windfall to which the law does not entitle him." Lockhart v. Fretwell, 506 U.S. 364, 369–70 (1993); Allen v. Sec'y, Fla. Dep't of Corr., 611 F.3d 740, 754 (11th Cir. 2010).  A defendant therefore must establish "that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Lockhart, 506 U.S. at 369 (quoting Strickland, 466 U.S. at 687).  Or in the case of alleged sentencing errors, a defendant must demonstrate that there is a reasonable probability that, but for counsel's errors, the result of the proceeding would have been less harsh due to a reduction in the defendant's offense level.  Glover v. United States, 531 U.S. 198, 203–04 (2001).  A significant increase in sentence is not required to establish prejudice, as "any amount of actual jail time has Sixth Amendment significance." Id. at 203.

To establish ineffective assistance, Defendant must provide factual support for his contentions regarding counsel's performance. Smith v. White, 815 F.2d 1401, 1406–07 (11th Cir. 1987).  Bare, conclusory allegations of ineffective assistance are insufficient to satisfy the Strickland

test.  *See* Boyd v. Comm'r, Ala. Dep't of Corr., 697 F.3d 1320, 1333–34

(11th Cir. 2012); Garcia v. United States, 456 F. App'x 804, 807 (11th Cir.

2012) (citing Yeck v. Goodwin, 985 F.2d 538, 542 (11th Cir. 1993)); Wilson

v. United States, 962 F.2d 996, 998 (11th Cir. 1992); Tejada v. Dugger,

941 F.2d 1551, 1559 (11th Cir. 1991); Stano v. Dugger, 901 F.2d 898, 899

(11th Cir. 1990) (citing Blackledge v. Allison, 431 U.S. 63, 74 (1977)).

Finally, the Eleventh Circuit has recognized that given the principles

and presumptions set forth above, "the cases in which habeas petitioners

can properly prevail . . . are few and far between."  Chandler, 218 F.3d at

1313.  This is because the test is not what the best lawyers would have

done or even what most good lawyers would have done, but rather whether

some reasonable lawyer could have acted in the circumstances as defense

counsel acted.  Dingle, 480 F.3d at 1099; Williamson v. Moore, 221 F.3d

1177, 1180 (11th Cir. 2000).  "Even if counsel's decision appears to have

been unwise in retrospect, the decision will be held to have been

ineffective assistance only if it was 'so patently unreasonable that no

competent attorney would have chosen it.'"  Dingle, 480 F.3d at 1099

(quoting Adams v. Wainwright, 709 F.2d 1443, 1445 (11th Cir. 1983)).  The

Sixth Circuit has framed the question as not whether counsel was

inadequate, but rather whether counsel's performance was so manifestly

ineffective that "defeat was snatched from the hands of probable victory."

United States v. Morrow, 977 F.2d 222, 229 (6th Cir. 1992).  Regardless of

how the standard is framed, under the prevailing case law it is abundantly

clear that a moving defendant has a high hurdle to overcome to establish a

violation of his constitutional rights based on his attorney's performance.

A defendant's belief that a certain course of action that counsel failed to

take might have helped his case does not direct a finding that counsel was

*constitutionally ineffective* under the standards set forth above.

An evidentiary hearing is unnecessary when "the motion and files

and records conclusively show that the prisoner is entitled to no relief."

*See* 28 U.S.C. § 2255(b);  Rosin v. United States,786 F.3d 873, 877 (11th

Cir. 2015); Gordon v. United States, 518 F.3d 1291, 1301 (11th Cir. 2008).

Not every claim of ineffective assistance of counsel warrants an evidentiary

hearing.  Gordon, 518 F.3d at 1301 (citing Vick v. United States, 730 F.2d

707, 708 (11th Cir. 1984)).  To be entitled to a hearing, a defendant must

allege facts that, if true would prove he is entitled to relief.   *See* Hernandez

v. United States, 778 F.3d 1230, 1234 (11th Cir. 2015).  A hearing is not

required on frivolous claims, conclusory allegations unsupported by

specifics, or contentions that are wholly unsupported by the record.  *See*

Winthrop–Redin v. United States, 767 F .3d 1210, 1216 (11th Cir. 2014)

(explaining that "a district court need not hold a hearing if the allegations [in

a § 2255 motion] are ... based upon unsupported generalizations") (internal

quotation marks omitted); Peoples v. Campbell, 377 F.3d 1208, 1237 (11th

Cir. 2004).  Even affidavits that amount to nothing more than conclusory

allegations do not warrant a hearing.  Lynn, 365 F.3d at 1239.  Finally,

disputes involving purely legal issues can be resolved by the court without

a hearing.

### *Mootness*

The Court takes notice of the Bureau of Prisons official website,

which discloses that Defendant was released from prison on May 27,

2015.[5]  Although Defendant is no longer incarcerated, this case is not

necessarily moot.  Once attached, federal jurisdiction is not automatically

defeated by the release of a defendant before the section 2255 motion is

resolved.  *See* Carafas v. LaVallee, 391 U.S. 234, 238 (1968).  For

instance, if a defendant is serving a term of supervised release, he is still

subject to restrictions on his liberty which could be affected if he prevails in

---

[5] Defendant has not filed a notice of change of address with the court.

Case Nos.: 4:08cr50/WS/GRJ; 4:12cv656/WS/GRJ

an action challenging his conviction and sentence.  *See* <u>Dawson v. Scott</u>,
50 F.3d 884, 886 n. 2 (11th Cir. 1995) (citing <u>Jago v. Van Curen</u>, 454 U.S.
14, 21 n. 3 (1981) (per curiam); <u>United States v. Eske</u>, 925 F.2d 205, 206
n. 2 (7th Cir.1991)); <u>Cleckler v. United States</u>, 410 F. App'x 279 (11th Cir.
2011) (citing <u>Dawson</u>);  <u>Kusay v. United States</u>, 62 F.3d 192 (7th Cir.
1995); <u>Minor v. Dugger</u>, 864 F.2d 124, 127 (11th Cir. 1989).  Therefore,
despite a release from incarceration, such a defendant remains "in
custody" within the meaning of 28 U.S.C. § 2255.  *See* <u>United States v.
Brown</u>, 117 F.3d 471, 475 (11th Cir. 1997); *see also* <u>Jones v. Cunningham</u>,
371 U.S. 236, 240–43 (1963) (holding that paroled prisoner is in custody
when the terms of his release impose "significant restraints on petitioner's
liberty because of his conviction and sentence, which are in addition to
those imposed by the State upon the public generally"); <u>United States v.
Essig</u>, 10 F.3d 968, 970 n. 3 (3d Cir.1993) (holding expressly that
supervised release satisfies the "in custody" requirement of § 2255).  Thus,
because Defendant is still on supervised release (*see* ECF No. 131),
merits review of the instant petition is appropriate.

### *Ground One*

In Defendant's first ground for relief, Defendant asserts that trial counsel failed to respond appropriately to allegedly prejudicial comments made during jury selection by a federal agent who was one of the venire persons.

During jury selection, prospective juror Dennis McLean identified himself as a special agent with the U.S. Customs Service, Office of Investigation, and a part time instructor in the criminial justice divisions of South University and Keiser University.  (ECF No. 161 at 8–9.)  When the prospective jurors were asked whether they had heard about the case, Mr. McLean said that he had followed it in the newspapers and some of the talk shows and that there had been discussion among his colleagues about the case.  (ECF No. 161 at 17.)  The court inquired whether he had formed any opinions on the merits of the case and McLean responded "As to this defendant, no, sir; but as to the case, yes."  The court asked what McLean's opinion was and he responded "Well, sir, as I said before, I have 32 years as a federal agent.  When two of the defendants plea out, that pretty much says it."  (ECF No. 161 at 18.)  The case had received some publicity prior to trial.  Although the court asked the majority of jurors who

indicated that they had heard about the case whether they could sit in the court room and make a decision based only on the evidence presented rather than what they had previously heard or read, it made no further inquiry of prospective juror McLean.  The record reflects that at side-bar, counsel agreed that McLean should be excused and the court also stated "he needs to come off."  (ECF No. 161 at 29–30.)

Defendant now asserts that McLean's statement "unequivocally inculpated the accused and tainted the entire jury pool," and that counsel should have moved for a mistrial or requested a curative or cautionary jury instruction.  He claims that the only logical conclusion from McLean's comment was that McLean believed that Defendant was guilty because his co-defendants had admitted their guilt.

McLean was removed from the jury pool and thus he was not part of the final deliberations.  And as conceded by Defendant, the court later instructed the jurors, who were selected, that they should "not form or express any opinion about the case one way or the other until [they] have heard all of the evidence and have had the benefit of the closing arguments."  Defendant maintains that this statement, made two hours after McLean's comments, was too late, as the damage already had been

done and the effects of the comment had "matriculated throughout the trial."   With respect to the curative instruction, Defendant says that a jury cannot always be trusted to follow instructions to disregard improper statements.   *See* Bruton v. United States, 391 U.S. 123, 126 (1968); United States v. Crutchfield, 26 F.3d 1098 (11th Cir. 1994).

Defendant's claim of prejudice is too speculative to be persuasive. There is no evidence that the jury's guilty verdict four days later was a result of McLean's statement resonating in its collective mind, rather than the jury's thoughtful consideration of the abundance of evidence against Defendant presented at trial.   The court concurs with Defendant that the sidebar conference does not support the Government's position that counsel's decision not to press for a curative instruction or further inquiry was a strategic decision aimed at not calling attention to the dismissed juror's comment.  (ECF No. 216 at 8.)  Counsel's failure, however, to move for the dismissal of the jury panel or request a curative instruction beyond the one given by the court, in light of the record as a whole, was not constitutionally ineffective.[6]

---

[6] By the same token, there is little doubt that a newly empaneled jury that had not heard the allegedly prejudicial comment would have reached the same result on the evidence presented.

At the time the comments were made, the jurors had not yet been selected, and thus none of them knew whether they would be called upon to decide the case.  Defendant's suggestion that the jury was exposed to "prejudicial extrinsic influence" overstates the gravity of the situation.  *See* United States v. Khanani, 502 F.3d 1281, 1291 (11th Cir. 2007).  The totality of McLean's comments during voir dire, including that he had not made a decision about the guilt of this particular Defendant, was not the sort of "prejudicial extrinsic influence" with the power to infect the entire trial, as Defendant suggests.  *But see*, Paschal v. United States, 306 F.2d 398 (5th Cir. 1962) (overturning conviction for passing counterfeit bills after a dismissed veniresman, a stockholder and bank director, said that the bank "got some Paschal money" three years prior to the trial.  The court found this comment to be prejudicial, but also premised reversal on damaging inadmissible hearsay testimony given by a secret service agent).  Furthermore, while acknowledging the Supreme Court's observation in Bruton, there is no evidence whatsoever that McLean's comments weighed upon any of the jurors, individually or collectively, either at the time they received the general instruction or during their deliberations.  The Supreme

Court summarized "intrusion" jurisprudence in <u>Smith v. Phillips</u>, 455 U.S.

209 (1982) as follows:

> [D]ue process does not require a new trial every time a juror
> has been placed in a potentially compromising situation. Were
> that the rule, few trials would be constitutionally acceptable....
> [I]t is virtually impossible to shield jurors from every contact or
> influence that might theoretically affect their vote. Due process
> means a jury capable and willing to decide the case solely on
> the evidence before it, and a trial judge ever watchful to prevent
> prejudicial occurrences and to determine the effect of such
> occurrences when they happen.

*Id*., at 217; *see also* <u>United States v. Olano</u>, 507 U.S. 725, 738 (1993)

(citing <u>Smith</u>).

In light of both the deference shown to counsel's performance, and

the lack of evidence suggesting that the jurors were unable to listen to the

evidence presented over the course of the four day trial and draw their own

conclusions as they were instructed, Defendant has not shown that he is

entitled to relief.

### *Ground Two*

Defendant's second ground for relief is that defense counsel failed to

conduct a reasonable pretrial investigation or introduce favorable evidence

at trial.  As a result, he asserts, the prosecution's case was not subjected

to any meaningful adversarial testing.

Besides Defendant, only Jorge Olaves, Toney Farrell and Ashley Swopes testified for the defense at trial.[7]  The testimony of each witness was brief.  Mr. Olaves, a professor at FAMU, testified about a legitimate grade change Defendant received after completing course requirements. (ECF No. 164 at 938–941.)  Mr. Farrell, who was employed with the FAMU registrar's office, testified that he had not provided his password to any of the co-defendants or assisted them in any way with the grade changing scheme.  (ECF No. 164 at 941–946.)  Ms. Swopes testified that she had dated Lawrence Secrease during the time period in question and that Secrease had briefly mentioned the grade changing scheme, but never said that Defendant was involved.  (ECF No. 164 at 946–947.)

Defendant claims that he presented his attorney with a "substantial list of potential witnesses and potential testimony that they could have offered to support the theory of defense—"mere presence"—and impeach the testimony of Jacquette and Secrease. (ECF No. 200 at 10, ECF No. 210 at 72–73.)  Defendant asserts that the co-defendants exaggerated his role and falsely implicated other individuals who were not involved.  (ECF

---

[7] From the record, it appears that counsel potentially anticipated other witnesses. Before calling Defendant to the stand he requested permission from the court to see who else was waiting outside the courtroom.  (ECF No. 164 at 185.)

No. 210 at 24.)  As "evidence" of this, Defendant has submitted a January 2013 affidavit from former inmate John Cuthbert.  (ECF No. 210 at 119.) Cuthbert claims that in the spring of 2010, while he was incarcerated with Lawrence Secrease, Secrease confided in Cuthbert that Secrease had "lied about some things that helped convict his co-defendant."  (ECF No. 210 at 119.)   Cuthbert states that Secrease did not share the details of what he allegedly lied about but that Secrease said "that the grade changing 'didn't go down how they said it did.'" (ECF No. 210 at 119.)  This information is not only hearsay, it is too vague to be of any significance or provide support for Defendant's claim.

Defendant has also submitted numerous letters, or partial letters, as exhibits.  There is one letter from co-defendant Jacquette to Defendant's sister Mia Barrington, as well as numerous other letters addressed to "S" from "B."  (*See* ECF No. 210 at 83–88, 89–95, 99–111.)  The unsworn, undated, and in many instances incomplete, letters do not provide evidentiary support for Defendant's claim for relief.

Finally, Defendant has appended the "statements" of Magalie Yacinthe and Ashley Swopes to his reply.  The two statements, while corroborating Defendant's assertion that counsel did not interview these

potential witnesses before trial, are  bereft of any support for Defendant's assertion that exculpatory or impeachment evidence was available from either of these two witnesses.  (ECF No. 216 at 36, 37.)[8]

Defendant also asserts that counsel "lied" to the court about having subpoenaed witnesses (*see* ECF No. 210 at 74–75), and that counsel "suddenly" instructed him to marshal witnesses on the last day of trial. Defendant states that his mother had to write a $1000.00 check to counsel to cover the cost of the subpoenas for last-minute witnesses.  (*See* ECF No. 216 at 35.)  Defendant says that he was unable to secure the attendance of most of the individuals he contacted, and ultimately he had to testify "unprepared."    Again, Defendant has not established prejudice because he has not established the existence of any impeachment evidence that existed which would have altered the outcome of the proceedings.

---

[8] In addition to Ms. Yacinthe, Defendant asserts that counsel should have called Thaddeus Welch, Caddice Elliott, Berline Thenor and Ebonee Randolph, who, he claims, could have provided impeachment testimony against the co-conspirators.  (ECF No. 216 at 16.)  Again, Defendant has presented nothing to indicate the nature of the testimony these individuals could have offered, or any proof that they would have been willing to testify in light of the fact that none were prosecuted for any role they may have had in the offense conduct.

*Ground Three*

Defendant asserts that counsel failed to either challenge an allegedly defective indictment or to request a special verdict for a multi-object conspiracy.  Count One charged Defendant under 18 U.S.C. §§ 371 and 1349 with conspiracy to commit two offenses: wire fraud in violation of 18 U.S.C. § 1343 and computer fraud in violation of 18 U.S.C. § 1030(a)(4). (ECF No. 1 at 2–3).  The computer fraud violation has a base offense level of 6 with a statutory maximum sentence of five years, whereas wire fraud has a base offense level of seven with a statutory maximum sentence of 20 years. Based upon this, Defendant argues that the Government should not have been allowed to arbitrarily select the harsher of the two for sentencing purposes, particularly given that the conspiracy to commit computer fraud (changing grades) comprised the majority of the conspiracy, as contrasted with a single phone call that he asserts was the basis for the wire fraud. (ECF No. 210 at 35.)

The sufficiency of the indictment was raised on direct appeal.  The Eleventh Circuit found that Defendant's failure to raise the argument regarding the defective indictment before the district court constituted waiver thereof.  United States v. Barrington, 648 F.3d 1178, 1189–90 (11th

Cir. 2011) (*citing* Fed.R.Crim.P. 12(b)(3)(B); United States v. Ramirez, 324

F.3d 1226, 1227–28 (11th Cir. 2003)).  The Eleventh Circuit further found

that Defendant had not demonstrated "good cause" to exempt him from the

application of the waiver rule.  *Id*. at 1190 (citing United States v. Seher,

562 F.3d 1344, 1359 n. 15 (11th Cir. 2009) ("Good cause is not shown

where the defendant had all the information necessary to bring a Rule

12(b) motion before the date set for pretrial motions, but failed to file it by

that date.")).  The court went on to note that:

> Notwithstanding that the conspiracy alleged in Count One
> violated two distinct conspiracy statutes, 18 U.S.C. § 371 and §
> 1349, the district court, through a jury instruction expressly
> requested by Barrington limited Count one to a § 371 violation.
> Any claimed duplicity was thereby rendered harmless.  *See*
> Reno v. United States, 317 F.2d 499, 502 (5th Cir. 1963)
> (duplicity not a fatal defect and where charge is limited to a
> single violation, any possible duplicity is rendered harmless).

Barrington, 648 F.3d at 1190 n. 6.  The Eleventh Circuit further concluded

that the jury   was "correctly instructed on the single conspiracy charged in

Count One and the two objects of that conspiracy," and noted that a

conviction on a multi-object conspiracy is properly upheld if the evidence is

sufficient to support a conviction of any of the alleged objects.  *Id*., 648

F.3d at 1190 and n.7 (citing United States v. Ross, 131 F.3d 970, 984

(11th Cir. 1997).  Although the record did not reflect the underlying reason for the agreement, the parties agreed that Count One should be submitted to the jury as a violation of 18 U.S.C. § 371, and thus "there was no error, much less error going to the likelihood of a miscarriage of justice or error which affect the fairness of the trial."  *Id*., 648 F.3d at 1190.  The Eleventh Circuit further noted that the unearned credit hours (resulting from failing grades being changed to passing grades) and the reimbursed tuition (as a result of changes in residency status) constituted "money or property" obtained by wire fraud as well as "things of value" obtained through computer fraud, and thus there was no plain error in the jury's verdict.  *Id.* at 1192.  In light of the Eleventh Circuit's determinations on these issues, Defendant has not shown that counsel was constitutionally ineffective.

***Ground Four***

Defendant asserts that his sentence violated his Fourteenth Amendment right to due process and equal protection of the law because his sentence was far in excess of the sentences of other individuals, including his co-defendants, convicted of "comparable" crimes.

Defendant challenged the substantive and procedural reasonableness of his sentence on appeal, and therefore the question may

not be relitigated in a petition under § 2255.  *See* <u>Barrington</u>, 648 F.3d at 1203–1204.  To the extent Defendant intends to bring his claim as one alleging ineffective assistance of counsel, it is also without merit.

At sentencing, counsel brought to the court's attention numerous cases from other jurisdictions where individuals had been charged with the same type of fraud and received sentences significantly lower from the sentence faced by Defendant.  (ECF No. 169 at 36–39.)  Counsel urged the court to avoid unwarranted sentence disparity, "not only with him and co-defendants, but him and other students countrywide."  (ECF No.169 at 39.)  Neither the underlying details of nor the citations to each of the cases referenced by counsel is before the court, and as such there is no proof that the individual would have been "similarly situated" upon closer scrutiny.  Furthermore, to the extent Defendant claims his sentence was disproportionate to the sentence imposed upon his co-defendants, his claim, even if cognizable on collateral review, is factually unfounded.  The record is abundantly clear that, although the co-defendants were charged with the same conspiracy, Defendant and his co-defendants were not "similarly situated."

Co-defendants Secrease and Jaquette both entered timely pleas of guilty, thus accepting responsibility for their actions.  Each co-defendant participated in a Rule 11 proffer in which he candidly admitted guilt.  Each man subsequently testified against Defendant at trial, and received the benefit of a § 5K1.1 motion.  (*See* ECF Nos. 109, 110.)  Neither Secrease nor Jaquette was assessed points for a leadership role, and neither was penalized for obstruction of justice.  Furthermore, the district judge's low-end guidelines sentence was affected by the fact that "[t]he evidence of guilt at trial was overwhelming, and [Defendant] displayed an arrogance and contempt for the law... that was shocking to me and would be shocking to those who know you and submitted statements on your behalf."  (ECF No. 169 at 63–64.)  In spite of this, the district judge still found fit to sentence Defendant at the lower end of the applicable guidelines range. Defendant has not suggested what other arguments counsel could or should have made that would have altered the outcome of the sentencing proceeding, and he has not shown that he is entitled to collateral relief on his claim that his sentence was somehow disparate or excessive.

### Ground Five

Defendant's final claim asserts prosecutorial misconduct.  Defendant claims that AUSA Eric Mountin threatened, continuously intimidated, and induced co-defendants Secrease and Jacquette to testify against him. Again, the unsworn letters allegedly authored by his co-defendants after the conclusion of the case are neither authoritative nor persuasive.  (*See* ECF No. 210 at 83–88, 89–95, 99–111.)  As noted by the Government, at the time Jacquette and Secrease entered their pleas of guilty, the U.S. Magistrate Judge conducted a thorough Rule 11 plea colloquy regarding the facts of the case, the rights they were giving up by entering guilty pleas and the fact that no one had either pressured them into pleading guilty or made any promises or assurances regarding sentencing.  (*See* ECF Nos. 40, 54.)  AUSA Mountin has submitted an affidavit indicating that "no witness was ever threatened, coerced, intimidated, induced or coached to testify in any particular manner."  (ECF No 215 at 44.)  Perhaps more significantly, Charles E. Hobbs, II, counsel for Christopher Jacquette submitted an affidavit in which he states that to the best of his recollection "at no point did AUSA Mountin or any other member of law enforcment commit any improper acts in obtaining Jacquette's testimony" and that had

counsel or his client believed that anything untoward had been done to him by AUSA Mountin or authorities, counsel "most certainly would have brought the same to Mr. Mountin or the court's attention prior to or during sentencing."  (ECF No. 215 at 46.)

Defendant also contends that the Government failed to correct Secrease's "materially false and perjured testimony" that the Government had not made any promises to him.  (ECF No. 200 at 9.)  Secrease testified that the plea and cooperation agreement did not contain any agreement between him and the Government as to what his sentence would be, and that his sentence would ultimately be up to the district judge. (ECF No. 163 at 159.)  This testimony was not false. The potential benefits to Secrease of having entered into the plea agreement were explored on cross-examination.  (ECF No. 163 at 252–257.)  The witness admitted that he hoped to receive a significant benefit for testifying for the Government, but that there was no promise.

Finally Defendant claims that the prosecution failed to disclose to the defense the existence of a subpoena response from GOOGLE evidencing that "no e-mail logs were found to be affiliated with the "famutorch2007@gmail.com" email address which was admitted into

evidence at trial as exhibit 28(a). (ECF No. 200 at 10.) Defendant asserts

that this document is exculpatory in that it undermines the Government's

theory of the case, that the "famutorch" email address was used as a

repository for the illicitly obtained user names and passwords.

Defendant's contention, broadly interpreted, is that the prosecution

failed to disclose material favorable evidence in violation of Brady v.

Maryland, 373 U.S. 83, 87 (1963). Brady held that the suppression by the

prosecution of evidence favorable to the accused upon request violates

due process where the evidence is material either to guilt or to punishment,

irrespective of the good faith or bad faith of the prosecution. *Id.* It is no

longer imperative that there be a request for the production of such

evidence. Kyles v. Whitley, 514 U.S. 419, 433–34 (1995); United States

v.Shurs, 427 U.S. 97, 110 (1976); *see also* United States v. Scheer, 168

 F.3d 445, 451 (11th Cir. 1999)(material favorable, exculpatory or

impeachment evidence must be produced regardless of request). A

successful *Brady* violation claim requires a showing that: (1) the

prosecution possessed evidence favorable to the accused (including

impeachment evidence); (2) the defendant did not possess the evidence

nor could he have obtained it himself with any reasonable diligence; (3)

that the prosecution suppressed the favorable evidence; and (4) had the evidence been revealed to the defense, there is a reasonable probability that the outcome of the proceedings would have been different.  United States v. Simms, 385 F.3d 1347, 1357 (11th Cir. 2004); United States v. Vallejo, 297 F.3d 1154, 1164 (11th Cir. 2002);  United States v. Schlei, 122 F.3d 944, 989 (11th Cir. 1997).  A "reasonable probability" is a "probability sufficient to undermine confidence in the outcome."  United States v. Bagley, 473 U.S. 667, 682 (1985) (quoting Strickland v. Washington, 466 U.S. 668, 694 (1984)); Kyles, 514 U.S. at 434; Scheer, 168 F.3d at 451–52.  The law is clear that Brady requires disclosure of material impeachment evidence as well as material exculpatory evidence.  Mize v. Hall, 532 F.3d 1184, 1193 (11th Cir. 2008).  Defendant has offered no proof that this evidence was "withheld" from the defense.  AUSA Mountin's affidavit supports this conclusion.  (ECF No. 215 at 45.)  In sum, Defendant has not established prosecutorial misconduct.[9]

---

[9] The Government says that even if there were some merit to Defendant's contention that  its theory of the case was "flawed," as Defendant suggests, there was sufficient evidence to support his conviction of the charged conduct.  As such, there was no "fundamental miscarriage of justice."  See ECF No. 215 at 26–28; Murray v. Carrier, 477 U.S. 478, 496 (1986).

## CONCLUSION

For all of the foregoing reasons, the court concludes that Defendant has failed to show that any of the claims raised in his motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255 have merit.  Nor has he shown that an evidentiary hearing is warranted.  Therefore Defendant's motion should be denied in its entirety.

## Certificate of Appealability

Rule 11(a) of the Rules Governing Section 2255 Proceedings provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant," and if a certificate is issued "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)."  A timely notice of appeal must still be filed, even if the court issues a certificate of appealability.  Rule 11(b), § 2255 Rules.

After review of the record, the court finds no substantial showing of the denial of a constitutional right.  § 2253(c)(2); Slack v. McDaniel, 529 U.S. 473, 483–84 (2000) (explaining how to satisfy this showing) (citation omitted).  Therefore, it is also recommended that the court deny a certificate of appealability in its final order.

The second sentence of  Rule 11(a) provides: "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue."  If there is an objection to this recommendation by either party, that party may bring this argument to the attention of the district judge in the objections permitted to this report and recommendation.

Based on the foregoing, it is respectfully **RECOMMENDED**:

1.  The motion to vacate, set aside, or correct sentence (ECF No. 200) should be **DENIED**.

2.  A certificate of appealability should be **DENIED**.

**IN CHAMBERS** at Gainesville, Florida, this 2nd day of December, 2015.

*s/Gary R. Jones*
GARY R. JONES
United States Magistrate Judge

## <u>NOTICE TO THE PARTIES</u>

Objections to these proposed findings and recommendations must be filed within fourteen (14) days after being served a copy thereof.  <u>Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.</u>  A copy of objections shall be served upon all other parties.  If a party fails to object to the magistrate judge's findings or recommendations as to any particular claim or issue contained in a report and recommendation, that party waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions.  *See* 11th Cir. Rule 3-1; 28 U.S.C. § 636.